UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

| | |
|---|---|
| EVAN DESSO, Individually and For Others Similarly Situated<br><br>v.<br><br>PARKLAND AMBULANCE SERVICE, INC. | Case No.  1:25-cv-238 (MAD/PJE)<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action<br>FLSA Collective Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### Summary

1. Evan Desso (Desso) brings this class and collective action lawsuit to recover unpaid wages, untimely paid wages, and other damages from Parkland Ambulance Service, Inc. (Parkland).[1]

2. Parkland employed Desso as one of its Patient Care Employees (defined below).

3. Parkland pays Desso and the other Patient Care Employees by the hour.

4. Desso and the other Patient Care Employees regularly work more than 40 hours a workweek.

5. But Parkland does not pay them overtime wages at the required rate for all hours they work in excess of 40 a workweek.

6. Instead, Parkland rounds Desso's and the other Patient Care Employees' hours to the nearest quarter hour, while prohibiting them from "clocking in" more than 7.5 minutes before their scheduled shift start time and "clocking out" more than 7.5 minutes after their scheduled shift end time (Parkland's "automatic rounding policy").

7. But if Desso and the other Patient Care Employees clock in even a moment after their

---

[1] Parkland also does business as Capital District Ambulance Service, Doctors Ambulance Service, Mohawk Ambulance, and Mohawk Ambulance Service.

1

scheduled start time or before their scheduled end time, they are considered tardy.

8. Additionally, Parkland pays Desso and the other Patient Care Employees non-discretionary bonuses and shift differentials that it fails to include in their regular rates of pay for overtime purposes (Parkland's "bonus pay scheme").

9. Parkland's automatic rounding policy and bonus pay scheme violate the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) by depriving Desso and the other Patient Care Employees of the overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—they are owed for all hours worked in excess of 40 each workweek.

10. Additionally, Desso and other Patient Care Employees work as "manual workers," as defined by NYLL § 191.

11. Despite being manual workers, Parkland fails to pay Desso and the other Manual Workers (defined below) their wages within seven calendar days after the end of the week in which they earned such wages, as required by NYLL § 191.

12. Instead, Parkland pays Desso and the other Manual Workers on a bi-weekly basis.

13. Parkland thus fails to timely pay earned wages to Desso and the other Manual Workers.

14. Desso and the other Manual Workers are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955).

15. Accordingly, Parkland's failure to timely pay wages owed to Desso and the other Manual Workers constitutes an "especially acute injury" under NYLL § 191. *See Caul v. Petco Animal Supplies, Inc.,* No. 20-CV-3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 [N.Y. 1st Dept. 2019]).

16. Finally, Parkland did not provide Desso and the other Patient Care Employees with accurate and complete pay statements, in violation of the NYLL.

## JURISDICTION & VENUE

17. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

18. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

19. This Court has general personal jurisdiction over Parkland because Parkland is a New York corporation.

20. Venue is proper because Parkland maintains its principal place of business in Schenectady, New York, which is in this District and Division. 28 U.S.C. 1391(b)(1).

## PARTIES

21. Desso worked for Parkland as an EMT and paramedic in New York from approximately July 2021 through October 2024.

22. Throughout his employment, Parkland imposed its automatic rounding policy on Desso and paid him under its bonus pay scheme.

23. And throughout his employment, Parkland paid Desso every other week.

24. Desso's written consent is attached as **Exhibit 1**.

25. Desso brings this action on behalf of himself and all other similarly situated employees who Parkland imposed its automatic rounding policy on, paid under its bonus pay scheme, and/or paid bi-weekly.

26. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Parkland EMTs, paramedics, and similar job positions during the past 3 years through final resolution of this action ("FLSA Collective Members").**

27. Desso also seeks to represent a class under the NYLL pursuant to FED. R. CIV. P. 23.

28. The putative New York Class of similarly situated employees is defined as:

> **All hourly Parkland EMTs, paramedics, and similar job positions who worked in New York during the last 6 years and 228 days[2] through final resolution of this action. (the "New York Class Members").**

29. Desso also seeks to represent a class of manual workers under NYLL 191 pursuant to FED. R. CIV. P. 23.

30. The putative class of similarly situated manual workers is defined as:

> **All Parkland employees who were required to perform physical patient care duties in New York at any time during the past 6 years and 228 days through final resolution of this action. (the "Manual Workers").**

31. The FLSA Collective Members, New York Class Members, and Manual Workers are collectively referred to as the "Patient Care Employees."

32. Parkland is a New York corporation that maintains its principal place of business in Schenectady, New York.

33. Parkland may be served with process by serving its officers, directors, managing agents, or general agents at its registered address: **357 Kings Road, Schenectady, New York 12304**

## COVERAGE UNDER THE FLSA

34. At all relevant times, Parkland was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

35. At all relevant times, Parkland was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

---

[2] This class period is due to Governor Cuomo's Executive Orders that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for a total of 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law); *McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

36. At all relevant times, Parkland was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cell phones, computers, pens, and pencils, that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

37. At all relevant times, Parkland has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

38. At all relevant times, the Patient Care Employees were Parkland's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

39. At all relevant times, the Patient Care Employees were engaged in commerce or in the production of goods for commerce.

**FACTS**

40. Parkland touts that itself as "the largest privately-owned ambulance service in upstate New York."[3]

41. To meet its business objectives, Parkland hires employees, like Desso and the other Patient Care Employees, to care for and transport patients.

42. Parkland pays Desso and the other Patient Care Employees by the hour.

43. Parkland routinely schedules Desso and the other Patient Care Employees to work more than 40 hours a workweek.

44. For example, Desso worked for Parkland as an EMT and paramedic from approximately July 2021 to October 2024 in and around upstate New York.

45. As an EMT and paramedic, Desso's primary job duties included cleaning the ambulance and station, responding to 911 emergency calls, performing emergency medical treatment

---

[3] https://mohawkambulanceservice.com/about-us/ (last visited February 20, 2025).

5

on sick and/or injured patients, securing and transporting patients to hospitals and medical clinics, thus spending over 25% of his worktime performing such physical tasks, as well as standing or otherwise being "on his feet" for extended periods of time.

46. Parkland typically scheduled Desso to work 12 hours a day for at least 4 days a week (48 hours a workweek) "on the clock."

47. And Parkland paid Desso approximately $19.50 an hour.

48. And like Desso, Parkland typically schedules them to work 12 hours a day for at least 4 days a week (48 hours a workweek) "on the clock."

49. Thus, like Desso, the other Patient Care Employees regularly work more than 40 hours a workweek.

50. The other Patient Care Employees worked more than 40 hours in at least one workweek during the 6 years and 228 days before this Complaint was filed.

51. Like Desso, the other Patient Care Employees work in accordance with the schedule set by Parkland.

52. While exact job titles and job duties may differ, these employees are subjected to the same or similar policies and pay practices for similar work.

53. Indeed, Parkland does not pay Desso and the other Patient Care Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 hours a workweek.

54. Instead, Parkland employed Desso and the other Patient Care Employees subject to its automatic rounding policy.

55. Specifically, Parkland rounds their hours to the nearest quarter hour.

56. And Parkland prohibits them from "clocking in" more than 7.5 minutes before their scheduled shift start time.

57. Parkland likewise prohibits them from "clocking out" more than 7.5 minutes after their scheduled shift end time.

58. But if Desso and the other Patient Care Employees clock in even a minute after their scheduled start time or before their scheduled end time, they are considered tardy and subject to disciplinary action.

59. Thus, Parkland's automatic rounding policy in combination with the potential disciplinary action imposed for clocking in or out untimely forces Desso and the other Patient Care Employees to regularly perform their regular job duties off the clock and without compensation, for Parkland's primary benefit.

60. Thus, its uniform automatic rounding policy always benefits Parkland and not Desso and the other Patient Care Employees.

61. Under Parkland's automatic rounding policy, Desso and the other Patient Care Employees are denied overtime pay for all hours in excess of 40 a workweek, in violation of the FLSA and NYLL.

62. Parkland additionally requires Desso and the other Patient Care Employees to perform their regular job duties off the clock, without compensation, including on their days "off."

63. And Parkland pays Desso and the other Patient Care Employees non-discretionary bonuses, including sign on bonuses, retention bonuses, shift bonuses, training bonuses, as well as shift differentials, that it does not include in their regular rates of pay for overtime purposes.

64. Thus, Parkland failed to pay Desso and the other Patient Care Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

65. Likewise, Parkland failed to accurately record and/or identify the correct number of overtime hours Desso and the other Patient Care Employees work and/or accurately record their correct overtime rates of pay on their pay statements.

66. Additionally, despite regularly spending more than 25% of their shifts performing manual, physical tasks, Parkland fails to timely pay Desso and the other Manual Workers earned wages.

67. Instead, Parkland pays them their earned wages bi-weekly.

68. As a result of Parkland's untimely wage payments, it has underpaid Desso and the other Manual Workers for the first seven days of each bi-weekly pay period throughout their employment.

69. Thus, Parkland has failed to timely pay Desso and the other Manual Workers their earned wages not later than seven days after they earned such wages, as required by NYLL § 191(1)(a), for every other week throughout their employment.

70. As a result of Parkland's untimely wage payments, Parkland has underpaid Desso and the other Manual Workers every other week across this entire period.

71. Parkland's underpayments deny Desso and the other Manual Workers the time value of their earned wages. *See, e.g., Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339, 345 (S.D.N.Y. 2024).

72. For example, they are unable to invest, save, or purchase utilizing the wages they earned during the first seven days of each bi-weekly pay period throughout their employment.

73. Thus, Desso and the other Manual Workers are harmed by Parkland's untimely payment of their earned wages, which Parkland does in willful violation of NYLL 191.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

74. Desso brings his claims as a class and collective action on behalf of himself and the other Patient Care Employees.

75. The Patient Care Employees are uniformly victimized by Parkland's automatic rounding policy, bonus pay scheme, and bi-weekly pay.

76. Other Patient Care Employees worked with Desso and indicated they were paid in the same manner, performed similar work, and were subject to Parkland's same automatic rounding policy, bonus pay scheme, and bi-weekly pay.

77. Based on his experience with Parkland, Desso is aware Parkland's illegal practices were imposed on other Patient Care Employees.

78. The Patient Care Employees are similarly situated in the most relevant respects.

79. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime.

80. Therefore, the specific job titles or precise job locations of the various Patient Care Employees do not prevent class or collective treatment.

81. Rather, Parkland's automatic rounding policy, bonus pay scheme, and bi-weekly pay render Desso and the other Patient Care Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

82. Parkland's records reflect the number of "on the clock" hours the Patient Care Employees recorded working each week.

83. Parkland's records also show it paid the Patient Care Employees non-discretionary bonuses and shift differentials.

84. Parkland's records show it failed to include these non-discretionary bonuses and shift differentials in calculating their regular rates of pay.

85. The back wages owed to Desso and the other Patient Care Employees can therefore be calculated using the same formula applied to the same records.

9

86. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Parkland's records, and there is no detraction from the common nucleus of liability facts.

87. Therefore, the issue of damages does not preclude class or collective treatment.

88. Desso's experiences are therefore typical of the experiences of the Patient Care Employees.

89. Desso has no interest contrary to, or in conflict with, the other Patient Care Employees.

90. Like each Patient Care Employee, Desso has an interest in obtaining the unpaid wages owed under the FLSA and NYLL.

91. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of this Action.

92. Absent this class and collective action, many Patient Care Employees will not obtain redress for their injuries, and Parkland will reap the unjust benefits of violating the FLSA and NYLL.

93. Further, even if some of the Patient Care Employees could afford individual litigation, it would be unduly burdensome.

94. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Patient Care Employees' claims.

95. The questions of law and fact that are common to each Patient Care Employee predominate over any questions affecting solely the individual members.

96. Among the common questions of law and fact are:

   a. Whether Parkland applied its automatic rounding policy to the Patient Care Employees;

b. Whether Parkland's automatic rounding policy resulted in the Patient Care Employees performing compensable work off the clock and without compensation;

c. Whether Parkland's automatic rounding policy was carried out for its primary benefit;

d. Whether Parkland paid the Patient Care Employees non-discretionary bonuses and/or shift differentials;

e. Whether Parkland failed to include these non-discretionary bonuses and/or shift differentials in determining the Patient Care Employees' regular rates of pay for overtime purposes;

f. Whether Parkland's automatic rounding policy and/or bonus pay scheme deprived the Patient Care Employees of premium overtime wages they are owed under the FLSA and NYLL;

g. Whether Parkland paid the Patient Care Employees their earned wages on a bi-weekly basis;

h. Whether Parkland paid the Patient Care Employees their lawfully earned wages on an untimely basis in violation of the NYLL;

i. Whether Parkland's decision to not pay the Patient Care Employees overtime wages at the required rate for all overtime hours was made in good faith; and

j. Whether Parkland's FLSA and NYLL violations were willful.

97. As part of its regular business practices, Parkland intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and NYLL with respect to the Patient Care Employees.

98. Parkland's automatic rounding policy and bonus pay scheme deprived Desso and the other Patient Care Employees of the overtime wages they are owed under federal and New York law and its bi-weekly pay deprived these employees of timely receipt of their earned wages in violation New York law.

99. There are many similarly situated Patient Care Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

100. This notice should be sent to the Patient Care Employees pursuant to 29 U.S.C. § 216(b).

101. The Patient Care Employees are known to Parkland, are readily identifiable, and can be located through Parkland's business and personnel records.

**PARKLAND'S VIOLATIONS WERE WILLFUL**

102. Parkland knew it was subject to the FLSA's and NYLL's overtime and timely pay provisions.

103. Parkland knew the FLSA and NYLL required it to pay non-exempt employees, including the Patient Care Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

104. Parkland knew each Patient Care Employee worked more than 40 hours in at least one workweek during the 6 years and 228 days before this Complaint was filed because it expected and required them to do so.

105. Parkland knew the Patient Care Employees were its hourly employees.

106. Parkland knew it paid the Patient Care Employees by the hour.

107. Parkland knew it did not accurately record the overtime hours and rates of pay on the Patient Care Employees' pay statements.

12

108. Parkland knew it paid the Patient Care Employees under its automatic rounding policy.

109. Parkland knew this resulted in the Patient Care Employees performing compensable work off the clock and without compensation for Parkland's primary benefit.

110. And Parkland knew it paid the Patient Care Employees under its bonus pay scheme.

111. Parkland knew that under its bonus pay scheme it failed to include non-discretionary bonuses in the Patient Care Employees' regular rates of pay.

112. Parkland knew the NYLL requires it to pay manual workers their lawfully earned wages not later than seven calendar days after the end of the week in which such wages are earned.

113. Parkland knew Desso and other Patient Care Employees regularly spend more than 25% of their shifts performing physical tasks.

114. In other words, Parkland knew, should have known, or recklessly disregarded whether Desso and other Patient Care Employees were "manual workers" entitled to weekly pay under the NYLL.

115. Nonetheless, Parkland does not pay Desso and the other Patient Care Employees their lawfully earned wages within seven calendar days after the end of the week in which they earned such wages.

116. Instead, Parkland pays them on a bi-weekly basis.

117. In other words, Parkland knew, should have known, or recklessly disregarded whether it failed to timely pay Desso and the other Patient Care Employees their lawfully earned wages in violation of the NYLL.

118. Parkland's failure to timely pay Desso and the other Patient Care Employees their lawfully earned wages is neither reasonable, nor was Parkland's decision to pay these manual workers on a bi-weekly basis made in good faith.

119. Parkland's failure to pay Desso and the other Patient Care Employees overtime compensation at the required rate for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

120. Parkland knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA and NYLL.

121. Parkland knowingly, willfully, and/or in reckless disregard imposed its automatic rounding policy, bonus pay scheme, and bi-weekly pay that deprived the Patient Care Employees of premium overtime wages and/or timely payment of earned wages in violation of the FLSA and NYLL.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

122. Desso brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

123. Parkland violated, and is violating, the FLSA by employing non-exempt employees (Desso and the FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 a workweek.

124. Parkland's unlawful conduct harmed Desso and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

125. Accordingly, Desso and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL
### (NEW YORK CLASS)

126. Desso brings his NYLL claims as a class action on behalf of himself and the other New York Class Members pursuant to FED. R. CIV. P. 23.

127. Parkland's conduct violated, and is violating, the NYLL and its implementing regulations. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2.

128. At all relevant times, Parkland was subject to the NYLL because Parkland was (and is) an "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

129. At all relevant times, Parkland employed Desso and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

130. The NYLL requires employers, like Parkland, to pay non-exempt employees, including Desso and the other New York Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek. NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

131. Desso and the other New York Class Members are entitled to overtime pay under the NYLL.

132. Parkland violated, and is violating, the NYLL by employing non-exempt employees, Desso and the other New York Class Members, for workweeks longer than 40 hours without paying them overtime wages at rates at least 1.5 times their regular rates of pay for all hours worked over 40 in a workweek. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

133. Parkland's unlawful conduct harmed Desso and the other New York Class Members by depriving them of the premium overtime wages they are owed.

134. Accordingly, Parkland owes Desso and the other New York Class Members the difference between the rate actually paid and the required overtime rate plus interest on those amounts. *See* NYLL §§ 198(1-a) and 663(1).

135. Because Parkland acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law, Parkland is also liable to Desso and the other New York Class Members for an amount equal to all their unpaid wages as liquidated damages. *See* NYLL §§ 198(1-a) and 663(1).

136. Finally, Desso and the other New York Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action. *See* NYLL §§ 198(4) and 663(4).

<u>COUNT III</u>

**FAILURE TO PAY TIMELY WAGES UNDER THE NYLL**
**(MANUAL WORKERS)**

137. Desso brings his NYLL untimely payment claims as a class action on behalf of himself and similarly situated Manual Workers pursuant to FED. R. CIV. P. 23.

138. Section 191 of the NYLL requires employers, like Parkland, to pay manual workers, including Desso and the other Manual Workers, their lawfully earned wages weekly and not later than seven calendar days after the end of the week in which such wages are earned. *See* NYLL § 191(1)(a).

139. NYLL § 191's timely payment of wages provisions and its supporting regulations apply to Parkland and protect Desso and the other Manual Workers.

140. Parkland violated, and is violating, the NYLL by failing to pay Desso and the other Manual Workers on a timely basis. *See* NYLL § 191(1)(a).

141. Parkland's unlawful conduct harmed Desso and the other Manual Workers by depriving them of the earned wages they are owed.

142. In violating the NYLL, Parkland acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

143. Thus, Parkland's NYLL violations with respect to Desso and the other Manual Workers were "willful" within the meaning of NYLL § 198.

144. In *Caul v. Petco Animal Supplies, Inc*, Judge Kovner of the Eastern District of New York held the NYLL's liquidated damages provisions are "designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." No. 20-CV-3534 (RPK)(SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021), *motion to certify appeal denied*, No. 20-CV-3534 (RPK)(SJB), 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) (citing *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).

145. Accordingly, Desso and the other Manual Workers are entitled to recover the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## COUNT IV
### FAILURE TO PAY COMPLY WITH WAGE STATEMENT REQUIREMENTS UNDER THE NYLL (NEW YORK CLASS)

146. Desso brings his NYLL claims as a class action on behalf of himself and similarly situated New York Class Members pursuant to FED. R. CIV. P. 23.

147. Parkland failed to provide the New York Class Members with accurate, compliant wage statements with each payment of wages that accurately reflected their hours worked and their proper rates of pay, in violation of NYLL § 195(3).

148. Due to these violations, the New York Class Members are entitled to recover $250 for each workday that the violations occurred, up to a total of $5,000 per New York Class Member, and reasonable attorneys' fees and costs incurred in this action. NYLL § 198(1-d).

### JURY DEMAND

149. Desso demands a trial by jury on all Counts.

### RELIEF SOUGHT

WHEREFORE, Desso, individually and on behalf of the Patient Care Employees, seeks the following relief:

a.  An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.  An Order certifying a class action pursuant to FED. R. CIV. P. 23;

c.  An Order appointing Desso and his counsel to represent the interests of the Patient Care Employees;

d.  An Order finding Parkland liable to Desso and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.  An Order finding Parkland liable to Desso and the New York Class Members for all unpaid overtime wages and wage statement recovery owed under the NYLL, plus liquidated damages in an amount equal to their unpaid wages;

f.  An Order finding Parkland liable to Desso and the other Manual Workers for liquidated damages in the amount of Parkland's untimely wage payments pursuant to the NYLL;

g.  A Judgment against Parkland awarding Desso and the Patient Care Employees all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and NYLL;

h.  An Order awarding attorneys' fees, costs, and expenses;

i.  Pre- and post-judgment interest at the highest applicable rates; and

j.  Such other and further relief as may be necessary and appropriate.

Dated: February 21, 2025                           Respectfully submitted,

**BRUCKNER BURCH, PLLC**

By: */s/ Richard J. (Rex) Burch*
Richard J. (Rex) Burch
NY Reg. No. 6154876
NDNY Bar Roll # 704544
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

*Pro hoc vice applications forthcoming*

**ATTORNEYS FOR DESSO &
THE PATIENT CARE EMPLOYEES**